UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LINDA S. McCABE,                    )      NO. EDCV 07-0066-CT
                                    )
          Plaintiff,                )      OPINION AND ORDER
                                    )
          v.                        )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of                     )
Social Security,                    )
                                    )
                                    )
          Defendant.                )
_____)

     For the reasons set forth below, it is ordered that judgment
be entered in favor of defendant Commissioner of Social Security
("the Commissioner") because the Commissioner's decision is
supported by substantial evidence and is free from material legal
error.

                    SUMMARY OF PROCEEDINGS

     On January 24, 2007, plaintiff, Linda S. McCabe ("plaintiff"),
filed a complaint seeking judicial review of the denial of benefits
by the Commissioner pursuant to the Social Security Act ("the
Act").  The parties filed a consent to proceed before the
magistrate judge.  On June 7, 2007, plaintiff filed a memorandum of

points and authorities in support of remand or reversal.  On August
17, 2007, the Commissioner filed a brief in support of the answer.

SUMMARY OF ADMINISTRATIVE RECORD

1.   Proceedings

On August 15, 2002, plaintiff filed an application for
Supplemental Security Income ("SSI") benefits, alleging disability
since April 1, 2002, due to carpal tunnel syndrome and hepatitis
C.[1]  (TR 57-59, 66).[2]  The application was denied initially and upon
reconsideration and after a hearing before the Administrative Law
Judge ("ALJ").  (TR 10-19, 30-33, 37-41).

Plaintiff then filed a complaint in case number EDCV 04-1398-
CT seeking judicial review of the Commissioner's decision.  On
April 5, 2005, the court issued an order in case number EDCV 04-
1398 remanding the matter back to the Commissioner, (TR 471-82),
and, pursuant to the court's order, the Appeals Council remanded
the case back to the ALJ.  (TR 483).

On September 28, 2005, after the remand, plaintiff,
represented by an attorney, appeared and testified before the ALJ.
(TR 657-76).  A vocational expert ("VE") also testified.  On
October 20, 2005, the ALJ issued a decision that plaintiff was not
disabled, because she is capable of performing a limited range of
light work and, given that residual functional capacity ("RFC"),

---

[1]The Administrative Law Judge concluded that plaintiff's
carpal tunnel syndrome, hepatitis C, and depression constitute
severe impairments as that term is defined under the Act.  (See
TR 397).

[2]"TR" refers to the transcript of the record of
administrative proceedings in this case and will be followed by
the relevant page number(s) of the transcript.

1   plaintiff can perform jobs that exist in significant numbers in the

2   national economy.  (TR 394-402). The decision complied with this

3   court's directions in the remand order.

4        Plaintiff subsequently sought judicial review of the

5   Commissioner's decision in this court.

6        2.   Summary Of The Evidence

7        The ALJ's October 20, 2005 decision can be found at pages 394-

8   402 of the administrative record and, except as otherwise noted,

9   materially summarizes the evidence in the case.

10                    PLAINTIFF'S CONTENTIONS

11       Plaintiff raises the following issues:[3]

12  1.   The ALJ failed to properly consider the state agency

13       psychiatrist's opinion regarding plaintiff's ability to

14       perform detailed and complex tasks;

15  2.   The ALJ improperly accepted jobs from the VE requiring the

16       performance of detailed tasks; and,

17  3.   The ALJ failed to properly develop the record.

18                      STANDARD OF REVIEW

19       Under 42 U.S.C. §405(g), this court reviews the Commissioner's

20  decision to determine if: (1) the Commissioner's findings are

21  supported by substantial evidence; and, (2) the Commissioner used

22  proper legal standards.  Macri v. Chater, 93 F.3d 540, 543 (9th

23  Cir. 1996).  Substantial evidence means "more than a mere

24  scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but

25

26       [3]In this case, plaintiff raises new issues that were not
    raised in case number CV 04-1308-CT, despite the fact that issues
27  one and two concern evidence discussed in the ALJ's prior 2004
    decision.

28

1  less than a preponderance.   Sandgathe v. Chater, 108 F.3d 978, 980
2  (9th Cir. 1997).

3       When the evidence can reasonably support either affirming or
4  reversing the Commissioner's conclusion, however, the Court may not
5  substitute its judgment for that of the Commissioner.   Flaten v.
6  Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th
7  Cir. 1995).

8                            DISCUSSION
9       1.   The Sequential Evaluation
10      A person is "disabled" for the purpose of receiving social
11 security benefits if he or she is unable to "engage in any
12 substantial gainful activity by reason of any medically
13 determinable physical or mental impairment which can be expected to
14 result in death or which has lasted or can be expected to last for
15 a continuous period of not less than 12 months."  42 U.S.C.
16 §423(d)(1)(A).

17      The Commissioner has established a five-step sequential
18 evaluation for determining whether a person is disabled.  First, it
19 is determined whether the person is engaged in "substantial gainful
20 activity."  If so, benefits are denied.

21      Second, if the person is not so engaged, it is determined
22 whether the person has a medically severe impairment or combination
23 of impairments.  If the person does not have a severe impairment or
24 combination of impairments, benefits are denied.

25      Third, if the person has a severe impairment, it is determined
26 whether the impairment meets or equals one of a number of "listed
27 impairments." If the impairment meets or equals a "listed

28
                              4

1  impairment," the person is conclusively presumed to be disabled.

2       Fourth, if the impairment does not meet or equal a "listed

3  impairment," it is determined whether the impairment prevents the

4  person from performing past relevant work.  If the person can

5  perform past relevant work, benefits are denied.

6       Fifth, if the person cannot perform past relevant work, the

7  burden shifts to the Commissioner to show that the person is able

8  to perform other kinds of work.  The person is entitled to benefits

9  only if the person is unable to perform other work.  20 C.F.R. §

10 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).

11      2.  <u>Issues</u>

12          A.  <u>State Agency Psychiatrist's Opinion</u>

13      Plaintiff contends that the ALJ failed to properly consider a

14 June 10, 2003 mental functional capacity assessment by the state

15 agency psychiatrist, Kenneth D. Michael, M.D.  Specifically,

16 plaintiff contends that the ALJ failed to consider Dr. Michael's

17 assessment that plaintiff is moderately limited in her abilities to

18 understand and remember detailed instructions and to carry out

19 detailed instructions.  (Plaintiff's Brief at 3; TR 285).

20      State agency medical consultants are "highly qualified

21 physicians" who are also "experts in Social Security disability

22 evaluation."  20 C.F.R. § 416.927(f)(2).  "Findings of fact made by

23 State agency medical and psychological consultants . . . regarding

24 the nature and severity of an individual's impairment(s) must be

25 treated as expert opinion evidence of nonexamining sources."  SSR

26 96-6p.  ALJs "may not ignore these opinions and must explain the

27 weight given to these opinions in their decisions."  <u>Id</u>.; <u>see also</u>

28
                                  5

1   20 CFR § 416.927(f)(2).

2        Here, the ALJ did not ignore Dr. Michael's findings.  Instead,

3   the ALJ incorporated the summary and analysis of the medical

4   evidence from the ALJ's prior 2004 decision, in which he stated:

5           On June 10, 2003, the State Agency Board Certified
            Psychiatrist concluded that the [plaintiff] was depressed
6           and it was related to her medical condition. (Citation).
            Specifically, the impairments caused mild restriction of
7           activities of daily living, moderate difficulties in
            maintaining social functioning, moderate difficulties in
8           maintaining concentration, persistence or pace, and there
            was insufficient evidence to know if there were any
9           episodes of decompensation of extended duration.   The
            State Agency [psychiatrist] concluded that [plaintiff]
10          was able to do simple repetitive tasks that were object
            oriented.

11

12  (TR 15, 399).  This is an accurate summary of Dr. Michael's

13  findings.  (TR 271-87).  The ALJ concluded that, based on the

14  evidence of record (including Dr. Michael's findings), plaintiff

15  could perform a limited range of light work, which included the

16  limitation to "entry level work dealing with things rather than

17  people."[4]  (TR 397).

18       Dr. Michael's assessment on the Mental Residual Functional

19  Capacity ("Mental RFC") form that plaintiff is moderately limited

20  _____

21       [4]At her 2005 hearing, plaintiff did not indicate that her
    mental impairment caused any significant limitations on her
22  ability to work.  Instead, she testified that the symptoms that
    are keeping her from working are pain in her hands and liver,
23  rather than any mental limitations.  (TR 508).  In 2003,
    plaintiff was hospitalized for a depressive episode, which
24  coincided with recent cocaine use. (TR 306-26).  A plaintiff
    cannot receive disability benefits "'if alcoholism or drug
25  addition would . . . be a contributing factor material to the
    Commissioner's determination that the individual is disabled.'"
26  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007)(quoting 42
    U.S.C. § 423(d)(2)(C)).  Although plaintiff used drugs just prior
27  to the 2004 hearing, she claimed at the 2005 hearing that she had
    not used drugs since that time.  (TR 351-52, 519).

28

in the ability to perform detailed and complex tasks is assumed within his overall conclusion at the end of the form that, although she may have difficulty with detailed/complex tasks, she *can* perform limited public jobs involving simple repetitive tasks with adequate pace and persistence.  (See TR 287).  The ALJ limited plaintiff to "entry level work dealing with things rather than people."  (TR 397).  The limitation to "entry level work" (unskilled work) does not imply that plaintiff would be required to perform tasks beyond the limitations assessed by Dr. Michael.  See 20 C.F.R. § 416.968(a)("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  Little vocational preparation and judgment are needed for unskilled work.).[5]

The ALJ did not materially err in his consideration of Dr. Michael's assessment.

B.   <u>Vocational Expert Testimony</u>

---

[5]Plaintiff does not challenge the ALJ's consideration of the opinions of any other doctors.  The ALJ's assessment of plaintiff's functional capacity is consistent with specific findings of consultative psychiatric examiner Divy Kikani regarding plaintiff's capacity to perform workplace functions and is more restrictive than the functional assessment by Dr. Linda Smith, who performed a consultative psychiatric examination of plaintiff in 2002.  (See TR 176, 268, 400). Findings of psychiatrists who examined plaintiff consultatively constitute substantial evidence supporting the ALJ's decision.   See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(findings of consultative examiner constitute substantial evidence because they rest on the examiner's own independent examination of plaintiff); Magallanes v. Bowen, 881 F.2d 747, 752-53 (findings of consultative examiners can constitute substantial evidence supporting an ALJ's decision and the ALJ need not agree with every finding of an examining physician or testifying expert for the findings of that physician or expert to constitute substantial evidence).

In a related claim, plaintiff contends the ALJ erred in accepting the VE testimony concerning the jobs plaintiff could perform because the DOT categorizes those jobs as requiring a "reasoning level" of 2, which, plaintiff argues, would require plaintiff to follow "detailed" instructions.  Plaintiff contends that such a requirement is inconsistent with Dr. Michael's assessment that plaintiff was "moderately limited" in the ability to understand, remember, and carry out detailed instructions.

The DOT assigns each listed job levels of general educational development ("GED"), which "embrace[] those aspects of education (formal and informal) which are required of the worker for satisfactory job performance," and which generally are obtained from elementary school, high school and college.[6]  See DOT, Appendix C.  The GED scale is composed of three divisions: reasoning development, mathematical development and language development.  Id.  Reasoning development is graded into six levels.  Reasoning level 2 is the second lowest level and requires the employee to apply "common sense understanding" to "detailed *but uninvolved* written or oral instructions" and to "deal with problems involving a few concrete variables in or from standardized situations."  Id. (emphasis added).

Plaintiff seeks to equate the DOT's use of the terms "detailed but uninvolved instructions" in its multiple grade scale of

---

[6]Plaintiff testified that she attended high school through the ninth grade.  (TR 355).  Subsequently, she passed her high school equivalency exam and attended a business college in Alabama where she took word processing courses and passed the courses.  (TR 72, 355).

1 | reasoning levels based on educational development with the terms
2 | "detailed instructions" in the Mental RFC form.  The Mental RFC
3 | form, which is filled out by state agency physicians pursuant to
4 | the social security regulations, breaks down the plaintiff's
5 | ability to understand, remember and carry out instructions into
6 | just two categories: "short and simple" and "detailed."  (See TR
7 | 285 (mental RFC form providing summary conclusions evaluating
8 | ability to understand, remember and carry out either very short and
9 | simple or detailed instructions).  See also 20 C.F.R. §
10 | 416.969a(c)(1)(iii); 20 C.F.R., part 404, subpart P, Appendix 1,
11 | Listing 12.00(C)(3)("You may be able to sustain attention and
12 | persist at simple tasks but may have still have difficulty with
13 | complicated tasks").  The court disagrees with plaintiff's
14 | oversimplified analysis, which ignores the differences between
15 | graded DOT educational development levels and the residual
16 | functional capacity analysis performed pursuant to the social
17 | security regulations and takes the term "detailed" out of context.
18 | See Meissl v. Barnhart, 403 F.Supp.2d 981, 983-84 (C.D.Cal.
19 | 2005)(rejecting the argument that the DOT's use of the word
20 | "detailed" in its reasoning levels scale equates with the social
21 | security regulations' use of the word "detailed instructions" in
22 | forming a plaintiff's mental RFC, and concluding that a limitation
23 | to simple tasks performed at a routine pace did not preclude
24 | plaintiff from performing jobs that required a reasoning level of
25 | two).

26 | Moreover, Dr. Michael found that plaintiff was only
27 | "moderately" limited in her ability to carry out and understand
28 |

1   detailed instructions and could carry out simple, routine tasks

2   with adequate persistence and pace. (TR 285).  This is not

3   inconsistent with job duties that require only the application of a

4   "common sense understanding" to "detailed*, but uninvolved*"

5   instructions.  DOT, Appendix C.

6        Accordingly, the ALJ did not materially err in concluding,

7   based on the VE's testimony, that plaintiff can perform unskilled

8   jobs, such as parking lot attendant or a hand packager, which the

9   DOT rates as requiring a "reasoning level" of two.

10              C.   Development of the Record

11       Finally, plaintiff argues that the ALJ erred in failing to

12  fully develop the record because the ALJ did not supply a subpoena

13  to plaintiff to assist her counsel in obtaining updated medical

14  records from facilities where plaintiff received treatment.

15       The ALJ has a duty to fully and fairly develop the record.

16  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir 2001).  The ALJ

17  may discharge this duty in several ways including: subpoenaing

18  plaintiff's physician; submitting written questions to the

19  physician; continuing the hearing; or leaving the record open to

20  allow plaintiff to supplement the record.  Id.

21       The responsibility of the ALJ is not unlimited.  The ALJ's

22  duty to "conduct an appropriate inquiry" is triggered only if the

23  evidence is ambiguous or if the ALJ determines that the record is

24  inadequate for proper evaluation.  Id.

25       Here, the ALJ held the record open for "for many months" after

26  the hearing to allow plaintiff's counsel time to obtain and submit

27  additional records based on plaintiff's assertion at the hearing

28

1  that she was still regularly seeing a doctor.  (TR 398, 516, 526).

2  Plaintiff now contends that the ALJ should have also issued a

3  subpoena for these records.[7]  But counsel never requested that the

4  ALJ issue a subpoena, despite being told, prior to the hearing,

5  that if plaintiff wanted the ALJ to issue a subpoena, she (or

6  counsel) must submit a written request.  (TR 489, 516, 526).  See

7  also 20 C.F.R. § 416.1450(d)(2)(procedures for requesting that the

8  ALJ subpoena records or witnesses).  Instead, when counsel reported

9  that he had not received additional records and the ALJ asked if

10  counsel could make another attempt to obtain the records, counsel

11  replied, "I'll do that."  (Id.)

12       Under these circumstances, the court finds that the ALJ

13  adequately discharged his duty to develop the record in this case

14  by holding the record open for months to allow plaintiff's counsel

15  to submit additional updated records.   See Tidwell v. Apfel, 161

16  F.3d 599, 602 (9th Cir. 1998)(ALJ satisfied duty to develop the

17  record by keeping it open for supplementation by submission of

18  post-hearing evidence); see also Tonapetyan v. Halter, 242 F.2d at

19  1150 (duty may be fulfilled by keeping record open to allow

20  submission of additional evidence).

21

22                            CONCLUSION

23       If the evidence can reasonably support either affirming or

24  reversing the Commissioner's conclusion, the court may not

25  _____

26       [7]Plaintiff does not identify any material evidence that
would be in these purported updated records.  Nor does plaintiff
27  explain why she could not obtain these records directly from her
doctors who she testified she was regularly seeing.

28

substitute its judgment for that of the Commissioner.  <u>Flaten v.</u>
<u>Secretary of Health and Human Services</u>, 44 F.3d at 1457.

After careful consideration of the record as a whole, the
magistrate judge concludes that the Commissioner's decision is
supported by substantial evidence and is free from material legal
error.  Accordingly, it is ordered that judgment be entered in
favor of the Commissioner.


DATED: 8/28/2007            Carolyn Turchin
                    _____
                    CAROLYN TURCHIN
                    UNITED STATES MAGISTRATE JUDGE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28